```
LOUIS J. BLUM, SBN 220941
E-MAIL: lblum@mftb.com
BRETT T. WALKER, SBN 271499
E-MAIL: bwalker@mftb.com
MARKS, FINCH, THORNTON & BAIRD, LLP
ATTORNEYS AT LAW
4747 EXECUTIVE DRIVE – SUITE 700
SAN DIEGO, CALIFORNIA 92121-3107
TELEPHONE: (858) 737-3100
FACSIMILE: (858) 737-3101
```

Attorneys for Plaintiff RQ Construction, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RQ CONSTRUCTION, INC., a California corporation, <br><br> Plaintiffs, <br><br> v. <br><br> ECOLITE CONCRETE U.S.A., INC., a Nevada corporation; <br> ECOLITE INTERNATIONAL, INC., a Nevada corporation; <br> BRIAN SMITH, an individual; and <br> DOES 1 through 90, <br><br> Defendants. | CASE NO: 09CV2728 BEN (WVG) <br><br> RQ CONSTRUCTION, INC.'S MOTION IN LIMINE TO EXCLUDE EVIDENCE AND ARGUMENT RELATED TO RQ CONSTRUCTION, INC.'S PRIOR BUSINESS DEALINGS AND SHAREHOLDER EMPLOYMENT ACTIVITIES <br><br> [NO. 7 OF 10] <br><br> Assigned to: <br> Hon. Roger T. Benitez, Courtroom 3 <br> Hon. William V. Gallo, Courtroom F <br><br> Date:         March 13, 2012 <br> Time:       9:30 a.m. <br> Courtroom: 3 <br><br> Complaint Filed:  December 4, 2009 <br> Trial Date:        March 13, 2012 |

/ / / / /
/ / / / /
/ / / / /
/ / / / /

# I
# INTRODUCTION

RQ Construction, Inc. ("RQC"), makes this motion in limine to exclude any evidence of or reference to prior business dealings and shareholder employment activities of RQC and/or its CEO, George Rogers. This motion is brought because defendants cross-examined Rogers in deposition (excerpts below) and may seek to present arguments to the jury based upon inferences defendants may claim are somehow relevant. As explained below, however, these earlier events are irrelevant to the present litigation, and have no bearing on whether Brian Smith misrepresented facts or committed violations of federal and state securities laws in connection with the sale of ECUSA securities and a manufacturing business to RQC. Reference to these events at trial will only result in a waste of time and judicial resources and add unnecessary confusion. Thus, RQC requests that the Court exercise its discretion to exclude any evidence or argument at trial related to RQC's prior business dealings and shareholder employment activities.

# II
# BACKGROUND

On several occasions during pretrial discovery, counsel for Brian Smith inquired about issues related to the formation of RQC, as well as transactions that took place between the original shareholders of RQC. These events pre-dated RQC's business dealings with Smith (the First Memorandum of Understanding ["1st MOU"] between RQC and defendant ECUSA was signed November 7, 2006) and have no bearing on the issues in this case.

/ / / / /

/ / / / /

/ / / / /

MARKS, FINCH,
THORNTON & BAIRD,
LLP
4747 Executive Drive
Suite 700
San Diego, CA 92121
(858) 737-3100

1  For example, during the deposition of RQC's CEO George Rogers, counsel for Smith asked a series of questions related to Rogers' prior financing of a company called Bachmann Construction, Inc., and the nature of that business. Specifically, Rogers was questioned as follows:

> Q: And how did you become involved with Bachmann Construction Company?
>
> A: Friend of mine, Craig Bachmann, wanted to start his own construction company. And needed money, and I invested some money with him.
>
> Q: Did you receive stock or some ownership in Bachmann Construction in exchange for that investment?
>
> A: Yes, I did.
>
> Q: What was the amount of the investment?
>
> A: I don't recall.
>
> Q: Was that a single investment or continuing stream of investments over time?
>
> A: It was a continuing contribution of predominant -- it was some cash up front, and then I allowed them to utilize my office and some secretarial work and provided some of the overhead for the company.

(A true and correct copy of the relevant excerpts of Rogers' deposition testimony ("Rogers Depo.") is attached as Exhibit 6 to the concurrently filed Declaration of Louis J. Blum ("Blum Dec."). See lines 13:22-14:12; Blum Dec., ¶ 7.)

Later in the deposition, Rogers was asked about the winding down of Bachmann Construction (RQC began on September 10, 1996). Eventually, counsel for RQC objected to this line of questioning on the basis of relevance. Specifically, Rogers was questioned as follows:

> Q: You said you can't recall if you got any sort of stock or ownership interest in Bachmann Construction?
>
> A: I didn't say that.
>
> Q: What –

MARKS, FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive
Suite 700
San Diego, CA 92121
(858) 737-3100

| | |
|---|---|
| A: | I got stock. |
| Q: | Do you still own that stock? |
| A: | Company doesn't exist anymore. |
| Q: | When did it wind down? |
| A: | I don't recall the exact time. It wound down over the late 1990s. I don't remember when it was formally terminated. |
| Q: | That's fair. Do you know the reason why it wound down? |
| A: | Yes, I do. |
| Q: | And what is that? |
| A: | We chose to close it down, not do any more contracts in Bachmann. |
| Q: | Why was that? |
| A: | I and Tom Quinn had started another company and chose to do government contracting in that other company. |
| Q: | So when you say the decision was made to close it down, who made that decision? |

MR. BLUM: Mr. Caine, can you give me some offer of the relevance of this testimony? I'm giving you a lot of rope here, but you're talking about other companies and other businesses, so....

(Rogers Depo., 16:1-17:2; Blum Dec., ¶ 7.)

Despite RQC's objection on the basis of relevance, counsel for Smith continued to question Rogers related to the winding down of Bachmann, litigation in conjunction with the winding down, and the subsequent formation of RQC. The questioning continued as follows:

Q: Was there any litigation involved in the closing down of Bachmann Construction?

MR. BLUM: Again relevance.

THE WITNESS: Not in the closing down of it. There was litigation with Mr. Bachmann, which was – which was -- went on and we settled that.

/ / / / /

MARKS, FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive
Suite 700
San Diego, CA 92121
(858) 737-3100

BY MR. CAINE:

Q: Was that a lawsuit filed by you against him or him against you?

A: It was him against -- against me and the others involved in the RQ.

Q: Was that lawsuit filed in the state courts, as opposed to a federal lawsuit?

A: I believe so, but I don't -- I don't recall.

(Rogers Depo., 19: 12-25; Blum Dec., ¶ 7.)

Finally, Rogers was asked a series of questions related to the membership interests of the original shareholders of RQC, as well as various transactions that transpired between the shareholders. Specifically, Rogers was questioned as follows:

Q: When you and Mr. Quinn first started up RQ Construction, what was your respective ownership interests?

A: I believe I was 51 percent and Quinn was 49 percent.

\*   \*   \*

Q: Is Mr. Quinn still affiliated with RQ Construction?

A: No.

Q: When did he leave the company?

A: Three or four years ago.

Q: Was his interest bought out in some form?

A: It was.

Q: Was there any litigation filed as a result of Mr. Quinn leaving the company?

A: No.

Q: No lawsuits?

A: No.

Q: Were any claims made by you or by him against you?

MARKS, FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive
Suite 700
San Diego, CA 92121
(858) 737-3100

A:     No.

Q:     No claims of fraud or misdealings involving his exit from the company?

A:     No.

Q:     Is Mr. Quinn still in Southern California, to your knowledge?

A:     I do not know.

Q:     Are you still in contact with him at all?

A:     No.

Q:     And Mr. Quinn has no ownership interest at all now in RQ Construction?

A:     No.

(Rogers Depo., 20:8-12, 21:25-22:25; Blum Dec., ¶ 7.)

Once again, the Bachmann matter and the departure of Quinn as an employee (April 2006) and a director of RQC (July 2006) predated and have no relevance whatsoever to RQC's business dealings with Brian Smith (1st MOU dated November 7, 2006) and RQC's subsequent decision to invest in ECUSA stock and a manufacturing business.

### III

### EVIDENCE RELATED TO RQC'S FORMATION, PRIOR BUSINESS DEALINGS, AND PRIOR SHAREHOLDER EMPLOYMENT ACTIVITIES IS IRRELEVANT AND WILL RESULT IN A WASTE OF TIME AND CONFUSION OF THE ISSUES

Evidence is relevant only if it has a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Fed R. Evid. 401. Evidence which is not relevant is not admissible. Fed R. Evid. 402. Again, the key issues in dispute in this trial are whether Smith made certain misrepresentations and committed violations of federal and state securities laws in conjunction with RQC's investment in ECUSA stock and a manufacturing business. Smith's

MARKS, FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive
Suite 700
San Diego, CA 92121
(858) 737-3100

alleged violations and misrepresentations took place long after both the formation of RQC (1996) and Quinn's departure from RQC (April 2006 as an employee and July 2006 as a director) referenced in the deposition of Rogers above. In addition, issues related to RQC's formation, prior business dealings, and subsequent shareholder events had absolutely no impact or connection with RQC's later dealings with Smith and RQC's decision to invest in ECUSA securities. As such, this evidence has no tendency to make the existence of any fact of consequence more or less probable than it would be without the evidence, and it must therefore be excluded. Fed. R. Evid. 401, 402.

In addition, if Smith introduces this extraneous evidence, jurors may improperly attach significance to these facts or form the impression that RQC's shareholder employment activities and prior business dealings were somehow related to RQC's decision to invest in ECUSA. Excluding evidence on RQC's prior business dealings and shareholder employment activities will eliminate the possibility of such confusion. Finally, the Court has only allotted eight days for trial in this matter. If Smith is permitted to question witnesses concerning these issues, RQC will be forced to cross-examine witnesses or obtain rebuttal testimony to explain that these issues lack significance and did not influence RQC's ultimate decision to invest in ECUSA. Such unnecessary examination of witnesses on extraneous matters will waste precious time at trial and detract from the material issues in dispute.

## IV

## CONCLUSION

The history of RQC's prior business dealings and original shareholder employment activities are subjects wholly unrelated and unconnected to the issues in this case. Smith must not be permitted to muddy the waters in this trial by offering evidence on these irrelevant issues. Even if these issues have some

MARKS, FINCH, THORNTON & BAIRD, LLP
4747 Executive Drive
Suite 700
San Diego, CA 92121
(858) 737-3100

peripheral relevance, they should be excluded because their minimal probative value is substantially outweighed by the risk of unfair prejudice or confusing the issues for the jury.

DATED: January 31, 2012

Respectfully submitted,

MARKS, FINCH,
THORNTON & BAIRD, LLP


By:   s/Louis J. Blum
     LOUIS J. BLUM
     BRETT T. WALKER
Attorneys for Plaintiff
RQ Construction, Inc.
E-mail: lblum@mftb.com

971.016/32U7210.smt

MARKS, FINCH,
THORNTON & BAIRD, LLP
4747 Executive Drive
Suite 700
San Diego, CA 92121
(858) 737-3100